**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**ROBERT CORDARO,**           :
                                                        **3:10-CR-75**
    **Petitioner**              :
      **v.**
                                              :    **(JUDGE MANNION)**

**SCOTT FINLEY,**                  :

    **Respondent**          :

## MEMORANDUM

**I.    BACKGROUND**

On April 17, 2020, petitioner Robert Cordaro filed, *pro se*, an Emergency Petition for Transfer to Home Confinement, which the court construes as a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241, related to his 132-month sentence, due to the COVID-19 pandemic. (Doc. 538-1).[1] In particular, Cordaro seeks the court to immediately release

---

[1] The court notes that Cordaro did not cite to any statutory basis in his petition. The court initially styled Cordaro's filing as a motion against the government, however, upon closer review, the court finds that it is a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241. Thus, as Cordaro indicates in the caption of his petition, he is the petitioner and the proper respondent is Scott Finley, Warden at FCI-Schuylkill. *See* 28 U.S.C. §2243. "The writ, or order to show cause shall be directed to the person having custody of the person detained. These provisions contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge." Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004). Thus, the court will refer to the Finley herein as the respondent.

1

him from confinement in prison at FCI-Schuylkill, Low Security Camp, located in Minersville, Pennsylvania, to home confinement at his parent's house in Lackawanna County, due to his fear that he may contract the COVID-19 virus in prison and, his fear that if he does, based on his age and alleged medical conditions, he may be at greater risk to suffer more severe consequences. Alternatively, the court construes Cordaro's filing as a motion for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i).

On April 17, 2020, the court issued an order directing the respondent to file a response to the petition by April 23, 2020 due to the emergency relief requested. (Doc. 539). On April 22, 2020, the government filed a motion for a short extension of time to respond to Cordaro's motion until April 27, 2020, stating that there will be no prejudice to Cordaro since "[o]fficials at FCI-Schuylkill have advised the [government's counsel] that as of the filing of this motion, the institution has no reported cases of inmates or staff who have tested positive for the COVID-19 Corona Virus." (Doc. 540). The court granted the government's motion. (Doc. 541).

The respondent filed his brief in opposition to Cordaro's petition on April 27, 2020, (Doc. 544), with Exhibits, (Doc. 544-1). Cordaro filed his reply brief on April 27, 2020. (Doc. 545).

After considering Cordaro's petition and the respondent's brief, as well as the Exhibits, the court will dismiss his §2241 habeas petition without prejudice due to his failure to exhaust his administrative remedies with the federal Bureau of Prisons ("BOP") under 28 C.F.R. §§542.10, *et seq*. Insofar

as Cordaro's filing is considered as a motion for compassionate release, it will be dismissed without prejudice for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies under §3582(c)(1)(A)(i). To the extent Cordaro is challenging the BOP's decision that he is not eligible for home confinement designation under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003, the court does not have authority to grant his request for relief and order the BOP to release him to home confinement.

Finally, the court will direct the Clerk to more properly open Cordaro's emergency petition for transfer to home confinement based upon the Covid-19 as a petition pursuant to 28 U.S.C. §2241. The Clerk will then forward the appropriate paperwork to the petitioner for completion and return to the court, including the payment of the required filing fee or the presentation of an application to proceed *in forma pauperis.*

## II.   DISCUSSION[2]

---

[2]Since Judge Caputo stated the complete background of this case in his August 18, 2015 Memorandum denying Cordaro's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §2255, (Doc. 514), and since respondent states the background in his instant brief, (Doc. 544), the court does not repeat it herein. Suffice to say that Cordaro is currently serving a 132-month prison sentence that was imposed on January 30, 2012, after a jury convicted him of conspiracy, bribery, extortion, money laundering, racketeering, and tax offenses, which related to his service as a Lackawanna County Commissioner and to his demand for payments from contractors and firms who had or were seeking contracts with the County.

3

In his present petition, Cordaro again seeks his immediate transfer from FCI-Schuylkill to home confinement and requests the court to allow him to serve the remainder of his prison sentence in home confinement stating that he is at a higher risk if he contracts the COVID-19 virus based on his age (59) and his alleged chronic medical conditions, including asthma. Further, Cordaro points out that he is due to be released to 6-months home confinement in January 2021, as a result of accumulated good conduct time and with a favorable recommendation from his Case Manager at the prison. Thus, Cordaro's BOP projected full release date will be in July 2021.

Cordaro alleges that consistent with a March 26, 2020 Memorandum from U.S. Attorney General William Barr regarding guidelines to the BOP for the implementation of the CARES Act, §12003(b)(2), and directing the BOP to identify suitable inmates for home confinement with COVID-19 risk factors, he was on a list of 27 inmates at FCI-Schuylkill who met Barr's criteria for release to home confinement due to the COVID-19 pandemic. He states that he along with the other inmates were to be immediately released, upon the completion of the paperwork, which he indicates was around Easter Sunday. Cordaro alleges that despite the fact that Unit Manager Raup confirmed that he was on the list to be immediately released to home confinement and despite the fact that he met the requirements of Barr's "mandates" and "edicts" for home confinement, he was subsequently told by Raup that "no one" at the prison "would be released under General Barr's mandate." He states that he was then advised by prison staff that Finley was not releasing

any inmates to home confinement without a court order to help prevent the spread of the COVID-19 virus. In addition, Cordaro alleges that Finley has wrongfully denied him immediate transfer and release to home confinement in violation of Barr's directives due to a minor incident report filed against him on April 20, 2019 for possessing too much chewing gum. In support of his contention, Cordaro submitted a memo Raup sent to him on April 17, 2020, stating: "On April 18, 2020 (sic), you were considered for Home Confinement due to the COVID-19 virus. You were denied as a result from an incident report you received on April 20, 2019." (Doc. 542).

Thus, Cordaro states that since April 1, 2020, both the prison and camp at FCI-Schuylkill have been "locked down", and that the conditions of confinement are "contrary to all CDC, NIH, Commonwealth of Pennsylvania and other protective guidelines" regarding the COVID-19 virus. Cordaro then specifies numerous alleged conditions at the camp which do not comply with the safety guidelines. Cordaro concludes that based on the alleged conditions of the FCI-Schuylkill camp and the "woefully deficient" medical treatment available at the camp if the COVID-19 virus is introduced, there is "a clear and present danger" to his health and well-being.

Notwithstanding the myriad of alleged unsafe and unsanitary conditions at FCI-Schuylkill camp, neither Cordaro nor any other inmate at the camp have contracted the COVID-19 virus and, to date, the prison "has no reported cases of inmates or staff who have tested positive for the

COVID-19 corona virus."[3] Despite Cordaro's unsubstantiated assertion that no one has been tested at FCI-Schuylkill, as respondent notes, (Doc. 544 at 20 n. 4), that as of April 27, 2020, "the BOP has reported zero positive cases of COVID-19 at any federal correctional institution located in Pennsylvania."

As relief, Cordaro requests the court to immediately release him from confinement at FCI-Schuylkill camp, where there are no positive cases of COVID-19, to home confinement for service of the remainder of his sentence.[4]

As the court recently did in its March 2, 2020 Memorandum Order, (Doc. 535), with respect to Cordaro's Emergency Petition/Motion to Compel Respondents to Follow the First Step Act and Release Petitioner to Home Confinement, (Doc. 531), the court construes Cordaro's instant petition as another petition for writ of habeas corpus pursuant to 28 U.S.C. §2241.

No doubt that a habeas petition under §2241 is the proper vehicle for an inmate to challenge "the fact or length of confinement", Presser v. Rodriguez, 411 U.S. 475, 494 (1973), or the "execution" of his confinement. Woodall v. Fed. BOP, 432 F.3d 235, 241-42 (3d Cir. 2005). Further, the court must look to the remedy requested by the inmate to determine if he is

---

[3] Since the respondent details all of the safety measures implemented by the BOP in response to the COVID-19 virus in his brief, (Doc. 544 at 15-18), and since many of the measures are found on the BOP's website, they are not repeated herein.

[4] As the respondent points out, "[in] Lackawanna County, where Cordaro wishes to be placed on home confinement with his elderly parents, currently [as of April 27, 2020] reports 833 positive cases and 63 deaths."

seeking relief available in a habeas petition. "When a petitioner seeks immediate release from custody, the 'sole federal remedy' lies in habeas corpus." Camacho Lopez v. Lowe, 2020 WL 1689874, *8 (M.D.Pa. April 7, 2020) (citing Presser, 411 U.S. at 500).

In Camacho Lopez, the petitioner was an ICE detainee subject to a final removal order whose removal was set for March 30, 2020, but delayed due to his COVID-19 diagnosis. The petitioner filed a §2241 habeas petition seeking immediate release from confinement based on "the threat posed by the COVID-19 viral pandemic." The respondent argued that Camacho Lopez's petition should be construed as a civil rights action under 42 U.S.C. §1983. The court found that "the extraordinary conditions of confinement" "where the petitioner tested positive for and had been hospitalized by a potentially deadly pandemic virus and claims that officials cannot properly treat him---constitute the extreme case in which habeas relief might be available." *Id.* at 13. The court then concluded that based on the case's unique circumstances, "both the claim brought and the remedy sought are cognizable in habeas corpus." *Id.* The court found, however, that Camacho Lopez's continued detention in prison was proper and dismissed his habeas petition. *See also* Verma v. Doll, Civil No. 4:20-14, (M.D.Pa. April 9, 2020) (court found petitioner, an ICE detainee, "plainly seeks a habeas remedy" where he requested immediate release from custody based on alleged "constitutionally deficient conditions of confinement that threaten his life and health" in light of the COVID-19 pandemic); Saillant v. Hoover, 2020 WL

7

1891854, *3 (M.D.Pa. April 16, 2020) (the court agreed with the conclusions of the courts in Verma and Camacho Lopez "finding that a claim based on the COVID-19 pandemic [at CCCF by ICE detainee] is exactly the sort of 'extreme case' contemplated in [Ali v. Gibson, 572 F.2d 971 (3d Cir. 1978)]" "in which a petitioner may challenge the conditions of his confinement through a petition for writ of habeas corpus.").

In the present case, as in the above cited cases, although Cordaro is not an ICE detainee awaiting his removal, he similarly seeks immediate release from custody at FCI-Schuylkill since he believes his health is in imminent risk at the prison due to its alleged unsafe and unsanitary conditions and the possibility that he may contract the COVID-19 virus, which "is unequivocally a habeas remedy." United States v. Serfass, 2020 WL 1874126, *2 (M.D.Pa. April 15, 2020) (citation omitted). As the court in Camacho Lopez explained, 2020 WL 1689874, 11, the term "execution" of a petitioner's sentence is broadly defined by the Third Circuit "to include such matters as administration of parole, sentence computation, prison disciplinary proceedings, prison transfers, and even 'conditions' generally." (citing Woodall, 432 F.3d at 241-44).

In his petition, Cordaro clearly seeks relief that affects the execution of his 132-month prison sentence since he requests the court alter its terms and to immediately release him to home confinement. *See* Serfass, *supra*. Cordaro does not challenge the conditions of his confinement at FCI-Schuylkill and seek damages, and thus his filing is not a civil rights action.

*See* Parmeley v. Trump, 2020 WL 1987366, *2 (S.D.Ill. April 27, 2020) (court held that proposed class action civil rights complaint filed by inmates incarcerated in federal prison and in BOP custody who sought release from prison due to the COVID-19 virus was not a remedy that was available under Section 1983 or Bivens, and that "[a] petition for a writ of habeas corpus is the proper route if a prisoner is seeking 'what can fairly be described as a quantum change in the level of custody—whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation.'") (citation omitted).

Despite the fact that Cordaro was considered by the BOP for release to home confinement due to the COVID-19 virus on April 18, 2020, (Doc. 542), and denied release by Finley based on an incident report from last April, it is clear that in those ten days he did not exhaust all of his BOP administrative remedies prior to filing his instant petition. Even though Cordaro claims that he exhausted his administrative remedies since Finley denied him release to home confinement on April 18, 2020, Cordaro must still file an appeal with the BOP Regional Director, within 20 calendar days of the date the Warden signed the response. 28 C.F.R. §542.15(a). Then if the Regional Director denies his appeal, Cordaro must appeal that decision to the BOP General Counsel, within 30 calendar days from the date the Regional Director signed the response. *Id*. The appeal to the General Counsel is the final administrative appeal in the process. *Id*.

Since Cordaro has not exhausted all of his administrative remedies available with the BOP regarding his habeas petition, the court will dismiss it without prejudice. *See* Furando v. Ortiz, 2020 WL 1922357 (D.N.J. April 21, 2020) (court dismissed without prejudice the habeas petition of inmate serving his federal sentence at FCI-Fort Dix who sought immediate release to home confinement under the CARES Act, based on the COVID-19 virus and his age and chronic medical conditions which he alleged put him at high risk if contracted the virus, due to his failure to exhaust his BOP administrative remedies available under 28 C.F.R. §§542.10 to 542.19.).

"There is a judicially created exhaustion requirement for habeas petitions brought under 28 U.S.C. §2241." *Id.* at *3 (citing Callwood v. Enos, 230 F.3d 627, 633-34 (3d Cir. 2000)). Generally, "an inmate's failure to exhaust all stages of the administrative remedy system prior to the filing of a habeas petition under 28 U.S.C. §2241 is a proper basis for dismissal." *Id.* (citing Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir. 1996)). Exhaustion may be excused in "exceptional cases", such as the futility exception which only applies in "narrowly-defined circumstances." *Id.* at *3-4 (citations omitted).

In the present case, similar to the Furando case, the court finds that Cordaro must exhaust all of his available BOP administrative remedies challenging the April 17, 2020 denial of his release to home confinement. Even though the inmate in the Furando case was still waiting for his decision from the BOP as to whether he was eligible for release to home confinement

under the BOP's guidelines pursuant to the CARES Act, Cordaro, who was denied such release by Finley on April 18, 2020, must now pursue his remaining BOP administrative remedies to challenge this decision, including his instant claim that his April 2019 incident report was for a minor infraction and does not exclude him from home confinement. The circumstances of Cordaro's case fit squarely within the purposes of the exhaustion requirement. *See id.* at *3 (stating recognized purposes of exhaustion requirement) (citing Moscato, 98 F.3d at 761-62). (*See also* Judge Caputo's March 2 and 10, 2020 Orders, Docs. 535 and 536, holding that Cordaro must exhaust the BOP administrative remedies with respect to his emergency petition/motion to force Finley and the BOP to obey the FSA and to immediately release him to home confinement which was construed as a habeas petition). The court finds that none of the exceptions to the exhaustion requirement exist in this case, especially since there are no confirmed cases of the COVID-19 virus at FCI-Schuylkill. In fact, Cordaro's present petition is his third attempt to try and circumvent the exhaustion requirement and to have this court order his immediate release to home confinement. (*See* Docs. 530 & 533).

As such, before the court will review the decision of the BOP denying Cordaro home confinement placement due to the COVID-19 virus, Cordaro must exhaust his administrative remedies. Thus, insofar as the court construes Cordaro's instant petition as a habeas corpus petition under 28 U.S.C. §2241, it will be dismissed without prejudice for failure to exhaust

11

BOP administrative remedies. *See* Furando, *supra; see also* Simmons v. Warden, FCI-Ashland, 2020 WL 1905289 (E.D.Ky. April 17, 2020) (insofar as inmate was deemed as seeking habeas relief under §2241 with respect to his request for immediate release to home confinement claiming he satisfied criteria in the Attorney General's March 26, 2020 Memorandum to the BOP "regarding prioritizing home confinement of current federal inmates where appropriate in response to the ongoing COVID-19 pandemic" and claiming he was eligible for home confinement under the First Step Act, as amended by 18 U.S.C. §3582(c)(A)(1)(i), the court denied without prejudice habeas relief since inmate did not exhaust his administrative remedies within the BOP).

To the extent Cordaro's petition is construed as a motion for compassionate release from prison to home confinement under, 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), it will also be dismissed without prejudice for failure to exhaust administrative remedies.

Cordaro claims, without support, that he has asthma, as well as other chronic medical conditions putting him at a higher risk if he does contract COVID-19, and that based on his alleged conditions and age (59), and his allegation that FCI-Schuylkill is not providing him with proper medical care for his conditions, he appears to contend that there are "extraordinary and compelling" reasons justifying his compassionate release under §3582(c)(1)(A)(i). Nonetheless, Cordaro has not been exposed to the

COVID-19 virus at FCI-Schuylkill and he fails to dispute with any evidence the substantial steps identified in the respondent's brief that the BOP is taking to protect the health and safety of both inmates and staff at the camp as well as all of the federal prisons. As mentioned, there are presently no confirmed cases of the COVID-19 virus at FCI-Schuylkill or at any federal prison in Pennsylvania.

Regardless, even though Cordaro contends that he presented his request for compassionate release to the BOP and that Finley denied it on April 18, 2020, it must be dismissed for lack of jurisdiction, as the respondent argues, since he has not exhausted his administrative remedies under §3582(c)(1)(A), "which requires that a defendant seeking compassionate release present his application to the BOP and then either (1) administratively appeal an adverse result if the BOP does not agree that his sentence should be modified, or (2) wait for 30 days to pass." United States v. Zukerman, 2020 WL 1659880, *2 (S.D.N.Y. April 3, 2020). *See also* United States v. Raia, 954 F.3d 594 (3d Cir. April 2, 2020); United States v. Cruz, 2020 WL 1904476 (M.D. Pa. Apr. 17, 2020).[5]

Thus, the court cannot address whether Cordaro has demonstrated that "extraordinary and compelling reasons" justify his compassionate release from prison since he has not exhausted his administrative remedies

---

[5] As the respondent's Exhibits show, (Doc. 544-1), Cordaro's November 27, 2019 request for home confinement under the FSA and his appeals do not constitute exhaustion of his instant claim since they were not based on the COVID-19 virus.

with the BOP as required. *See* Zukerman, 2020 WL 1659880, *2 ("in order to be entitled to relief under 18 U.S.C. §3582(c)(1)(A)(i), [Cordaro] must both meet the exhaustion requirement and demonstrate that 'extraordinary and compelling reasons' warrant a reduction of his sentence."); Raia, 954 F.3d 594 ("The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons'" after the defendant exhausts administrative remedies with the BOP.) (citing18 U.S.C §3582(c)(1)(A)(i)); United States v. Soto, 2020 WL 1875147, *1 (D.Co. April 15, 2020) ("18 U.S.C. §3582(c)(1)(A) imposes a requirement on a defendant requesting compassionate release to exhaust all administrative rights before seeking such relief.") (citation omitted); United States v. Boyles, 2020 WL 1819887, *2 (D.KS. April 10, 2020) (the court held that since defendant did not exhaust his BOP administrative remedies as required, "it [did] not decide whether he has established that there are 'extraordinary and compelling reasons' why he should be released."); United States v. Wright, 2020 WL 1976828 (W.D.La. April 24, 2020) (court did not need to address whether inmate demonstrated extraordinary and compelling reasons to warrant his release to home confinement under the provisions of the compassionate release statute "due to the grave dangers presented by COVID-19" since inmate did not exhaust his administrative remedies under 18 U.S.C. §3852(c)(1)(A), which is mandatory and "the Court has no power to waive the exhaustion requirement."); Cruz, 2020 WL 1904476, *3.

Further, Cordaro does not demonstrate any "catastrophic health consequences" to make exhaustion futile or show that he could be unduly prejudiced if he had to wait to exhaust his administrative remedies with the BOP. *See* Zukerman, 2020 WL 1659880, *3; Cruz, 2020 WL 1904476, *3. Rather, he merely speculates that he may be exposed to COVID-19 if he comes into contact with someone at the prison who has the virus and he speculates that he would not receive proper medical care from the BOP if he did contract the COVID-19 virus. It must also be noted that Cordaro does not allege that he has contracted COVID-19 and he has not suffered any medical consequences from the virus since the pandemic started in the United States. Nor does anyone at the prison have the virus.

As the Third Circuit in Raia, 954 F.3d at 597, explained, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." (citation omitted). The Third Circuit then stated, "[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with §3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id.*

Finally, Cordaro's reliance on the CARES Act, which was signed into law on March 27, 2020, as well as Barr's March 26, 2020 and April 3, 2020 Memoranda to the BOP, is misplaced.[6]

Under the CARES Act "Congress sought to address the spread of the coronavirus in prisons by permitting BOP to expand the use of home confinement under [Section 602 of the First Step Act] §3624(c)(2)." Furando, 2020 WL 1922357, *2 (citing Pub. L. No. 116-36, §12003(b)(2)). "Upon direction of the Attorney General, Section 12003(b)(2) of the CARES Act temporarily suspends the limitation of home confinement to the shorter of 10 percent of the inmate's sentence or 6 months." Id.

Thus, the CARES Act provides that if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020, the BOP Director may increase the maximum amount of time that a prisoner may spend in home confinement under the first sentence of 18 U.S.C. §3624(c)(2). Id. at *3; Cruz, 2020 WL 1904476, *4.

As such, "the jurisdiction of [a home confinement] determination [under the CARES Act] is with the Director of the Bureau of Prisons." Id.

As the court in United States v. Sawicz, 2020 WL 1815851, *1 (E.D.N.Y. April 10, 2020), recently explained:

---

[6] The respondent included Barr's two Memoranda to the BOP as Exhibits 2 & 3, (Doc. 544-1). Thus, the court does not repeat the details of them. See also Furando, 2020 WL 1922357, *2-3 (court summarized Barr's Memoranda).

16

> [The] CARES Act expanded the maximum amount of time that a prisoner may spend in home confinement: "if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement ...." CARES Act §12003(b), Pub. L. No. 116-136, 134 Stat. 281 (2020). Attorney General William Barr made the requisite "finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons" on April 3, 2020, thereby triggering the BOP's authority to expand the amount of time that a prisoner may spend in home confinement.

As this court recently stated in Cruz, 2020 WL 1904476, *4, "the determination of which inmates qualify for home confinement under the CARES Act is with the BOP Director." (citing United States v. Doshi, 2020 WL 1527186, *1 (E.D.Mi. March 31, 2020) (The CARES Act "temporarily permits the Attorney General to 'lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement' under §3624(c)(2)", and "the authority to make this determination is squarely allocated to the Attorney General, under whose authority is the Bureau of Prisons."); United States v. Coker, 2020 WL 1877800, *1 (E.D.Tenn. April 15, 2020) (court stated that while section 12003 of the [CARES Act] "presently and temporarily provides for expanded prisoner home confinement", "[t]he CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons.") (citations omitted); United States v. Berry, 2020 WL 1984117, *3 (M.D.Pa. April 27, 2020) (same). Thus, "[c]ourts … do not have power to grant relief under Section 12003 of the CARES Act." *Id.* (citations omitted);

United States v. McCann, 2020 WL 1901089, *3 (E.D.Ky. April 17, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court has no authority under this provision to order that a prisoner be placed on home confinement.") (citation omitted).

In short, since Cordaro has not exhausted his mandatory administrative remedies with the BOP to the extent his instant filing is construed as a motion for compassionate release pursuant to the First Step Act of 2018, 18 U.S.C. §3582(c)(1)(A), the court will dismiss this motion without prejudice for lack of jurisdiction. *See* United States v. Soto, 2020 WL 1875147, *1 (D.Co. April 15, 2020) ("When a defendant fails to satisfy Section 3582(c)(1)(A)'s exhaustion requirement, a court is 'without jurisdiction to entertain [defendant's] request for compassionate release.'") (citations omitted); Boyles, 2020 WL 1819887, *2 (same); Raia, 954 F.3d at 597 (Third Circuit found that the defendants' failure to comply with §3582(c)(1)(A)'s exhaustion requirement "presents a glaring roadblock foreclosing compassionate release …."); Cruz, 2020 WL 1904476, *5; United States v. Berry, 2020 WL 1984117, *3 (this court held that "to the extent that Berry's motion is construed as seeking compassionate release, it would be dismissed for lack of jurisdiction since Berry has not exhausted her administrative remedies under §3582(c)(1)(A), ….") (citation omitted); *see also* United States v. Feiling, 2020 WL 1821457, *7 (E.D.Va. April 10, 2020) ("Because Defendant has failed to exhaust administrative remedies under

18

§3582(c)(1)(A), the Court lacks authority to grant a sentence modification under that provision.").

### III. CONCLUSION

Based on the foregoing, that aspect of Cordaro's emergency petition for transfer to home confinement related to the COVID-19 pandemic will be construed as a §2241 habeas petition, **(Doc. 538-1).** The Clerk will be directed to open it as a separate civil case and forward to the petitioner the appropriate paperwork for such a petition to be completed and returns with the appropriate filing fee or a completed application for *in forma pauperis* status. The petition will be **DISMISSED WITHOUT PREJUDICE** due to his failure to exhaust his BOP administrative remedies under 28 C.F.R. §§542.10. To the extent that Cordaro's filing is considered as a motion for compassionate release, it is properly filed, will remain in his criminal case and be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies under §3582(c)(1)(A)(i). Finally, insofar as Cordaro is challenging the BOP's decision that he is not eligible for home confinement designation under the CARES Act, the court will **DISMISS** it since the authority to make this determination lies with the BOP Director and not the court.

An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: April 29, 2020**
10-75-01